May it please the Court, Ilana Artson on behalf of the United States, I'd like to reserve three minutes for rebuttal. The District Court erred in invalidating in its entirety the statute that has been upheld, at least in substantial parts, of the Pacific Coast Road Act. The statute can reasonably be narrowed to avoid substantial First Amendment concerns, and any discrete portions that are overbroad can and should be severed. I have a public comment on the Dellington 7th Circuit, which reached that result by slightly different means. I hate to interrupt you in your opening remarks, but I'm having a hard time hearing you. As am I. I don't know what's going on with your... Can you hear me better now? Yes. I'll try to speak more loudly. Okay, I can hear you now. Let's see how it goes. So, Dellinger and Masellus, the two courts that upheld this statute, did so in slightly different ways, but under either of those readings were a combination thereof. The District Court erred in striking down the entire statute and dismissing the indictment. Now, before I address the reasoning of this statute, I think it's important to point out that unlike, for example, the statute that was held overbroad in Stevens, which addressed only speech, about the betrayal of foreign animals, this is a statute, most of which involves conduct, also multi-jurisdictional conduct, and violent conduct. In this case, organizing and planning to commit acts of violence and then going to rallies and engaging in that violence. That is significant in looking at whether this statute is substantially overbroad. Now, turning to the reasoning of Dellinger and Masellus, I'd like to start with the inverted act. And here we think that Dellinger got it right. The enumerated acts in subsection 2101A are the overt acts. And we know that from the text and from the history of the statute. The text in section 2101B specifically refers to those enumerated acts in subsection A. So we know that the enumerated acts were intended to be overt acts. And we see that in the legislative history. The original version of the statute that was passed in the House was patterned on the Staple Act. And the Staple Act has exactly the same structure as this statute. Now... Ms. Arce, let me ask you a question. Okay? So when I first looked at this statute, and looked at the district court judge's order, and I... It begins with, it starts out with the intent to, well, whoever travels or uses, right, with intent to incite a riot or organize, promote, encourage, participate, to commit an act, to aid or abet. Okay, so as I think about it, as I understand what the government would have to do, at least on that element, part of their affirmative case was to prove that intent, right? So that as a person traveled to another state, that they did so with the intent to incite a riot. Correct. Right? Why... That could be an overt act, but that doesn't seem to be an overt act. Well, the statute requires... Because you've got to have this intent. Right? Well, I agree, Your Honor, that this is a difficult statute for the government to meet its burden of proof. But we're talking about here whether it violates the First Amendment. Well, you were talking about overt acts, and you were talking about the Seventh Circuit's decision, and saying why they got it right and the Fourth Circuit got it wrong. Right, because the statute requires... The Fourth Circuit said the way to look at this is as an attempt, you look at it as an attempt statute. And if you do that, it's really not a problem. And... And that is one way to look at it. It is partly an attempt statute. The statute requires two separate acts. It requires the first act of traveling in interstate commerce, using interstate commerce facilities with intent to involve in one of those four enumerated intents. And then it requires a second overt act. I'm talking about the second overt act. That Dellinger correctly interpreted as being one of those acts. So, in other words, the statute prohibits traveling in interstate commerce with intent to engage in violence at a riot, and thereafter committing an act of violence in furtherance of the riot. Well, but it says any other overt act. That's why two acts are required. That travel use of facilities in interstate commerce, and then a subsequent separate act. Both with the necessary intent. So, I'm addressing that second overt act. Well, I understand that, but that's what I'm saying. It says to perform any other overt act. Now, I don't understand what you're saying. I mean, you said the overt act refers to the four categories. So, there are two acts that are required. One is either the use of facilities in interstate commerce or travel in interstate commerce with a separate intent. Got it. And then, a subsequent act. And that subsequent overt act has to be one of those four enumerated acts. Inciting, carrying on, participating in, committing an act of violence in furtherance, or aiding and abetting. That's how Dellinger, we think, correctly interpreted the statute because it's patterned on the Travel Act, and that's how the Travel Act is structured and interpreted. And it is consistent with the way that both the House and the Senate viewed the statute. In the House report, it is specifically described in that manner, as using facilities or traveling in interstate commerce and then committing an act. In the Senate, the language was somewhat changed to make explicitly clear that the second overt act requires intent. But the Senate kept that language, referring to the overt act as the enumerated acts in subsection A. And the sponsor there, likewise, described the statute as the facilities of interstate commerce committing both the acts that I just described. And once you conclude the overt act, that second overt act, as the same enumerated acts in subsection A, that really eliminates a very large part of the concern that would be relied on in finding the statute. So let's just think this through for just a second. So travel to another state to incite a riot, right? Let me ask you this. Wouldn't renting a car be another overt act to accomplish that objective? So it may be that renting a car with the intent to incite a riot or engage in violent acts at a riot would be sufficient for the first act. But then we still need that second act. Yes, I understand that. But I'm trying to understand what they meant when they said to perform any other overt act. You're saying that any other overt act just means the fourth. It can't possibly mean that. It doesn't make any sense to me. Well, it means exactly what happened here. The defense used facilities of interstate commerce, including credit cards, the internet, and so on, with intent to commit violence at a riot. Let me ask you this. Committed an overt act where they engaged in violence and participated in and carried on riots. Wouldn't using a credit card be an overt act to accomplish the objectives? I don't think that using a credit card would constitute, I mean, it could possibly be viewed as aiding and abetting. But I don't think it's aiding and abetting incitement or aiding and abetting committing an act of violence. It does constitute use of a facility of interstate commerce, but in order to violate the statute, you need a second act that accomplishes one of those four acts. Okay. And once we interpret the statute in that manner, most of the Brandenburg concerns go away. And it comes down, then at that point, to the four, the three verbs and phrases that Ms. Ellis stressed. And I'd like to take just a few minutes to talk about those. But even if the Supreme Court's ruling that Ms. Ellis' most furious purge of the last clause of 2102c are substantially overbroad, Ms. Ellis is already determined that those discrete portions of the statute can be severed, and she encourages you to follow the thorough analysis in Ms. Ellis regarding severing, which I'll hope to address in a moment, too. So with regard to those terms, organize, promote, encourage, we agree with Ms. Ellis that organizing does not implicate Brandenburg. Brandenburg is not about all speech. Brandenburg is only about speech that promotes advocacy of violence. Organizing, as Ms. Ellis noted, is not about mere advocacy. It's about constant aid, about organizing in a way that is really more like aiding and abetting violence, more like Brandenburg preparing a booth for violence. That is not prohibited under the First Amendment. If we adopt Ms. Ellis' construction to organize, do we also have to read in an eminence requirement? So, again, that eminence requirement only involves conduct that is not speech advocating violence. So, for example, arranging travel or logistics or obtaining supplies, those are not things that are prohibited. I take your point. Your point is that if we adopt Ms. Ellis' construction, organizing is no longer First Amendment conduct at all and we don't need to reach these other issues. Correct. And then the question really comes down to what does promote and encourage mean? And, again, those terms easily be improperly interpreted. You're fading out, Ms. Artson. You're fading. You keep fading. Your voice trails off and I can't hear the end of your remarks. So, with respect to promote and encourage, just as encourage and promote in Williams did not refer to abstract advocacy, it can also be interpreted in this case not to mean abstract advocacy, but rather the type of concrete solicitation, concrete aid that is not prohibited under the First Amendment. Similarly, with urging, Black's Law Dictionary describes urging, incitement to provoking an urge, describes interpretation as urging another to commit a crime. So, these are legal definitions that involve unprotected conduct and those are reasonable interpretations that this court can adopt. But, again, even if the court does not, severance is absolutely appropriate to it. There is a presumption of severance, as the Supreme Court repeatedly has made clear, and most recently in political consultancy with Fela Law, the normal rule is a presumption of severance. That presumption applies here. It can be very surgical. We brought that it was a single word in political consultancy. It was a phrase. This statute is fully capable of functioning independently without those limited verbs and phrase that Ms. Fela suggests. And that is really all that is required in order to apply this statute here. So, for that reason, it should be applied. I also want to make the point that we don't necessarily think that Ms. Sellis correctly analyzed the substantial amount of protected speech. Remember, the defendants bear the burden, both from the text and from actual facts, to show that there is a substantial amount of protected speech at issue here. The Supreme Court has repeatedly instructed that where we have conduct and not merely speech, whatever overbreadth exists should be addressed through as-applied litigation, as well as jury instruction. This is a statute that covers largely conduct with only some speech. And to the extent that there is any overbreadth, it is not substantial enough to justify equationally invalidating the entire statute. The Supreme Court has also made clear that there has to be a realistic danger that the statute will significantly compromise the protected speech. That, again, is not true here. The statute has a scientia requirement. And that was a very important fact for the Williams in determining that the statute before the Supreme Court there was not overbroad. That intense instigator riot also significantly cabins any concerns about showing protected speech. The Supreme Court has been reluctant to strike down statutes as patiently overbroad when there is a substantial number of legitimate applications. This statute has a substantial number of legitimate applications to conduct unprotected speech. If there is any overbreadth, it should be addressed. The Supreme Court has been reluctant to follow this statute. Did you want to save the remainder of your time for rebuttal? Yes. Unless the court has any other questions, I'd like to save the remainder of my time. Let's hear from the defendant unless Judge Tiger or Judge Fernandez has a question right now. I don't. Thank you. Okay. Let's hear from the defendant then. Good morning, Your Honors, and may it please the court. Brianna Mircheff. I represent Robert Rundo, and I'll be speaking for the appellees this morning. Our brief looks at the statute through the lens of Dellinger and tries to explain why we believe that approach is not sufficiently faithful to the text of the statute or protective of the First Amendment. I want to focus today on the Fourth Circuit's approach to the statute in Miscellany. We believe the Fourth Circuit's approach is underprotective of speech in three important ways. We also believe it erred in its severance analysis. I'll start with the interpretive questions since that obviously bears severance. First, and probably most fundamentally, the Fourth Circuit erred when it drew the line of protected speech at mere or abstract advocacy. Doing so allowed it to distinguish between promotion, encouraging, and urging, on the one hand, that were protected because they had no plain meaning consistent with concrete action, and words like organized and incitement that it found were not protected because it involved concrete action. There is a line of Fourth Circuit precedent that suggests that this is correct, but that has not been this court's case law. This court has consistently held that Brandenburg means what it says, that speech is protected so long as it is not intended to produce imminent lawlessness that's likely to occur. Under this court's line of cases, the line drawn by the Fourth Circuit in Miscellany is simply untenable, because using a facility of interstate commerce while harboring one of the intents charged under the statute has no connotation of imminence or likelihood that would be required to bring it within Brandenburg. This is perhaps easiest to see with a word like organized, which doesn't have a connotation of imminence or likelihood. We can think about organizing a college reunion for next summer. We might organize voters who may or may not show up at the polls. Indeed, even the government's plain meaning definition of organized, which is make preparations for, implies neither imminence nor likelihood. But in fact, this problem pervades the entire statute. For example, the word incite itself may have some tendency to suggest imminence or some connection between the riot itself, but taking to Facebook with the intent while harboring that intent to incite a riot does not require either imminence or likelihood of success. And I think this point is perhaps best shown in some of the charges that have been raised in the wake of the George Floyd uprising. We cite one such case in our 28 J letter response. That's the Gibson case, a case where a defendant takes to Facebook and says, we're going to go to a particular mall. The speeches, of course, are the Facebook posts are laden with a lot of speech about how the police are not sufficiently don't care about black people, things like this. And but of course, by the time he gets to the mall, the mall is covered with leaves. There's no actual riot that's about to occur. Another charge brought recently in the northern district of Ohio raises similar concerns. This is a charge in a case called United States versus TV. I, it's case number twenty six. Oh, nine, two. And it postdates are brief, but I'd be happy to submit a letter if you'd like. In that charge, the defendant takes to Twitter and says, the mayor of my town doesn't care about black people. And so five days from now, right, five days out from these tweets, we're going to take to the streets to, quote, endure on destruction. There's several other comments about perhaps we're going to go after certain Mansfield stores, but nothing concrete is proposed. And in this particular case that I'm speaking of, the defendant was arrested before the post speech even was to occur. He was arrested the day before that proposed speech. Right. So these charges establish that there is no no imminence required in even the word, even a word like inciting or organizing. Even a three is an entirely immune from this problem, right? A three is the provision that requires having the intent or taking an act of interstate commerce to the intent to commit a crime of violence. In this case, right, the count two is the lead up to the Berkeley riots. In that count, what's charged is the use of a credit card. The other one is, is this comment, this text message between two members of RAM. One says two weeks from now, right, they're talking two weeks out from the Berkeley riot. We've got to get 25 people together so we can form up and take anything out that comes with it. Right. That comment would certainly be a use of an interstate commerce facility while harboring the intent to commit a crime of violence. But there's no imminence there. There's no likelihood there. The problem with all of these words lies in the distance between the use of a facility of interstate commerce. Right. Taking to Twitter or Facebook or text with some intent to further or produce or or, you know, spur on a riot and the right itself. Now, the Fourth Circuit tried to bridge the gap between the speech act and a riot by saying that this was a simply essentially an attempt statute. But nothing in the text or the legislative history would permit this court to infer that an attempt statute was intended here. Right. We have a statute that prohibits two acts. Each one must have its own purpose. There's no the text does not require a connection between the two acts. And at least in this court over act has a pretty subtle meaning. Right. There's a there's a Ninth Circuit case called United States versus Harper. It's thirty three after eleven forty three. That says that the conduct that would satisfy the overt act requirement is not the same as a substantial step required for an attempt. And for that reason, the court upheld a conspiracy conviction while striking down an attempt conviction for the same conduct. It said a substantial step is significantly more significantly closer to the act itself. Now, there's also no legislative history that would suggest that this court could read this as an overt act or as an attempt statute. And indeed, the conduct that it was aimed at, these outside agitators would come into town and leave long before the riot occurred, wouldn't seem to capture, would not seem to be a substantial step that would be an attempt. And for that reason, because this problem infects the entire statute, we believe the district court was right when it said that the entire statute must be struck down because there is that the entire statute is overbroad. Now, we do think that this list made two additional errors and I want to address them briefly, but I do want to save some time for severance. So the second one is the fact that the definition of right is so broad that one can participate in or carry on or maybe even organize a riot, even if one intends only to conduct a peaceable counter protest. And that's because any person who participates in an event that has these particular elements is guilty of participating in a riot. There's no requirement that the person intend there to be violence or even that they be involved in the violence. Here in L.A., certainly in the wake of the George Floyd protest, there were several occasions where we saw individuals looting. And right next to it, we saw individuals who were standing outside of stores urging people to use nonviolent means of expressing their their anger at the police. It's hard to say that that person who is standing in front of the store watching this kind of looting go on has not participated in a public disturbance that involves these elements. And yet we would believe that that kind of speech is really within the heart of what the First Amendment protects. And again, this is an area where if this is true, it infects the entire statute. There's no need to conduct a severance analysis because riot is part of the definition itself. I want to briefly also address what we see is the third problem with missiles, and that is its rejection of the vagueness problem with riot. Now, I recognize that there are a number of courts that have upheld riot statutes. Those statutes generally require, as most state statutes do, certainly the ones that I reviewed in the Ninth Circuit, requiring measuring events on the ground to determine whether your conduct is likely in that moment to incite or contribute to a riot. The D.C. statute that missile sites is of this bill, right? The D.C. statute requires that one willfully associate with a violent assemblage. The Anti-Riot Act is different in a really important way. The Anti-Riot Act is committed upon the use of an interstate commerce facility and the commission of an overt act. So long as you've done those things and so long as the thing that you've organized or promoted or participated in is deemed a riot, you're guilty of the offense. As Dellinger recognizes, that's true whether a riot occurs or doesn't. And, again, this Peavey case out of Ohio is a case where the police arrest the individual before the speech that he had even planned. So the chilling effect of that kind of statute is particularly significant. In this day, much as was the case in 68 when this law was passed, there's a night's edge between a protest and a riot. And yet the act criminalized is committed before the riot ever occurs. I think this is important not only for this bigness point but also for the overt act point. I would point out that count two charged in this case, the actual Anti-Riot Act, the only named overt act is driving to Berkeley. In the government's eyes, in the charging documents, the crime is committed when the defendants get in their van and drive to Berkeley. That's the only named overt act of count two. Count one is the one that has dozens of overt acts. But for count two, the only named overt act is driving to Berkeley. Now, the problem here is that it's hard to predict in advance whether the thing that you are promoting or organizing or going to participate in is going to be a riot, right? As I was preparing for this argument this week, it was the lead up to the Million MAGA March, right? The Million MAGA March organized by Trump supporters. And yet if there was tweets, it was very clear that there were going to be other groups that were intending to join. So how is a group that wants to promote that act supposed to know whether what they're promoting or organizing is going to be deemed a riot? Are they bound by what's happened at past Trump rallies, if those turned violent? Do they have to take a measure of the people who said they're going to come and the people who, the counter protesters, the counter counter protesters, how many of them are going to come, whether the police have the situation under control? How, and not only do we look at it from the perspective of the person who's trying to comply with the law, who wants to have this speech act, who wants to protest? Also, I mean, how is the person who wants to arrest the person who's doing the speech, as was the case in Peavey, the person who's pulling an individual off the street before the intended speech act, supposed to address whether that conduct is likely to involve a riot? These are very good hypotheticals. I want to go back to an earlier one you used about the protester. It wasn't a protester. Well, it was. It's a protester who is at a protest and not themselves engaging in illegal conduct, but watching someone doing loot. Remember the hypothetical? Yes. Yeah. What is that person's, why are we worried about that person being prosecuted? What is their mens rea, that person's mens rea, the onlooker under this statute? That person, we would say, has continued to participate in a public disturbance that has these elements. That's not my question. My question is, this statute, what's the mens rea? The mens rea is that you have to engage in the act with a particular purpose. And the purpose has to do with fomenting. I'll use fomenting because it's one of the few verbs that's not in this statute. Yes. The purpose, generally speaking, has to do with fomenting riot, right? So the person has to have, we might quarrel with whether there's a good enough time connection. But the person has to have sort of wanted a riot. And maybe they don't want the person to take the TV out of the target. But doesn't the government have to prove that they wanted some sort of unlawful conduct? Or at least couldn't the statute be construed in that way? I think certain words have that connotation, right? I think three could be read with that view.  I think that definitely has that limitation. Contrast that, though, with participation. Right? I think at that point you only have to participate in the act that has those elements. Right? If you're standing outside of the store, I think you've participated in a riot. I think I take your point. Okay.  I missed it the first time. Thanks. I appreciate the opportunity to clarify. Okay. I want to move on to severability. Just before you get to severability, could you just go back and just clarify for me your understanding of the second overt act, the discussion that I had with counsel? Yes. So Dellinger says it can be read as an overt act because of B. Now, I think that the text of A is entirely clear. The text of A says use an overt act for any purpose specified. Overt act has a settled meaning. And we would say that when Congress, right, there's Ninth Circuit case law that says when Congress uses one of these words that has a settled meaning, the court should give it its settled meaning. It's aiming at predictability when it uses that word. Notably, I think by my count, the word overt act is used nine times in the United States Criminal Code or Military Justice Code. Seven of those are specifically with respect to conspiracies. Right? And that's why I think even Miscellus is wrong in saying that this is an attempt statute. But I certainly think it can't be defined as actual completion of the act itself. And Ms. Artson points out that this was modeled on the Travel Act. The Travel Act is that kind of statute, right? It says and thereafter performs an act described in the above paragraphs. The use of overt act here appears to be intentional. Now, the government would attempt to give this an idiosyncratic definition using 2101B. I think the point that if I understood it right, the point that you were making, Judge Pius, was that that that is difficult to reconcile with the first statement. Right. It's hard to call those overt acts. Yes. And again. They could be. They would be overt acts in the traditional sense. Right. They are acts that confirm that the thing has moved out of the figment of one's mind. And there's something actually afoot. That's the use. That's the that's the definition. It's given in conspiracy. That's the definition. It's given in treason cases. Right. It's it's some act that proves that this is moved beyond nearly the figment of one's imagination. My concern was with with this second overt act where it talks about any other overt act for any purpose specified in. Yes. One, two, three or four. I mean, I think the way to. I'm sorry. I think the way to read that is to say that it's counting the use of interstate commerce at the first overt act. Right. So you have an idea. You want a riot. It's in your head. You have to do two things beyond just simply having that intent in your head. You have to use a facility of interstate commerce or travel. And then you have to do something else. Correct. The same way. That is the same way the Travel Act works. Right. There has to be a use of interstate commerce. And then they're the commission of the act. You're a commission of an overt act. We think that's far short of what the government wants to read this as, which is fulfillment of one of these purposes. Right. So the way I understood it is my example with council was that, you know, you want to go to Nevada and you rent a car. I think that absolutely covers them in the act. And, indeed, again, that's the way COUNT2 is charged here. COUNT2 is charged. Right. A use of interstate commerce, which reading between the lines appears to be the text about making the arrangements to get 25 people. The arrangements they made about let's meet up at 830. I'm going to ask everyone to kick in 20 bucks. And then the overt act being driving to Berkeley. So I don't think even the way the government charged COUNT2 here is consistent with Bellinger. I do want to get to severance because I do think that's pretty important. I'll give you plenty of time. Don't worry. Okay. So I think the Miscellaneous Court made two key mistakes with respect to severance. The first is that it seemed to treat severance as a idea that so long as the sentence would continue to hold together grammatically, syntactically, that we can be surgical in our severance. We can take out parts of clauses and parts of phrases. I think that's a misreading of the Supreme Court's case law here. I would point the court to American Airlines, which I think makes this point most explicitly. That case involved a legislative veto. And the Supreme Court says, well, that part's unconstitutional. And, of course, we can take out a legislative veto and the thing still works. But that's not the analysis. A legislative veto is something that has a bearing on the separation of powers. And so we can't just say that because the statute would continue to function without a legislative veto, we can sever it off. We have to look at whether the statute would still function in the manner that Congress intended it to. We think that's the problem with severing off urging and the double negative provision of 2102A, sorry, 2102B. Because by doing that, you're giving 2101A, 1, 2, and 4, which are the provisions that apply to that urging and double negative, a definition that's far different than what Congress intended. It's far different than the speech that Congress was intending to capture. Congress wrote the statute so that it would specifically include the advocacy of acts of violence, that it would specifically include, as a gloss on each of those provisions, speech that went all the way down to urging. We think that if you simply do what the Fourth Circuit did and redline out the double negative, it's giving that definition a meaning very different from what Congress did, right? As the Supreme Court has said, we cannot rewrite a statute to give it an effect altogether different from that sought by the measure, from that sought by the measure viewed as a whole. Congress here was intending a speech that would happen far before a riot. It seems pretty clear that it was intending to capture exactly what it said, which is the speech that includes advocacy of violence or the rightness of violence. Now, I think there's a second problem, and I'll address it as quickly as I can, if that's okay. Go ahead, go ahead. Okay. And that is the problem that even if you could get beyond the problem of reading out, severing a statute so that it means the opposite of what Congress wrote, you still have the problem of would Congress have enacted that statute? We think that's still a relevant analysis, even after Barr. It's the one that the court applied last week in the ACA cases. It's the one that the SG urged in the ACA cases. As a historical matter, it is clear that Congress would not have passed the law if the only thing that was covered was mid-riot violence. And this 1968 Congress was singularly focused on outside agitators who traveled from state to state and left before the riot started so that their conduct could not be captured under any state's law. So the Fourth Circuit said, well, no, Congress really just meant to go up to the constitutional line. That's problematic for two reasons. One is that Stevens has said that it would reduce the incentive of Congress to write constitutional statutes if we simply say, well, we'll assume that Congress meant to do up to the constitutional line and we'll rewrite the statute for them. The other problem here is that it doesn't appear that Congress actually meant to go up to the constitutional line. Congress was very clear, and this is very clear in the legislative history, but it's also clear in 2101F, which is the provision that says nothing is interfering on state and local law enforcement's prerogative to handle riot conduct. It intentionally drew the line further from the riot conduct. That was the conduct it meant to capture. And we think that's another problem with the Miscellaneous Deference Analysis. Thank you. If there are no further questions, we urge affirmance. Okay, thank you very much. And Ms. Artson, you have time for rebuttal, and if you need more time, I'll give you a few more minutes. First of all, I think we need to start with the reminder that the Supreme Court has repeatedly stated that every reasonable construction must be reported to in order to say the statute is unconstitutional. These are reasonable constructions of the statute that we have suggested. And under that admonition... Closer to the mic. Stay close to your mic. As long as these are reasonable interpretations of the statute, this court must adopt it. I want to take a few minutes to address the governance arguments that the prison counsel made. First of all, in political consultants, I think the court made clear that it is moving away from this idea of trying to divine what Congress's intent was in passing a statute. Instead, it looks solely to the question of whether the statute is fully capable of functioning independently if certain discrete portions are removed. Under that test, this statute clearly survives the second step. Removing, promoting, encouraging, even organizing, even urging, the last clause of 2102B, the statute clearly survives and serves its purpose that it clearly survives independently and can function without those terms. And even if this court were to sort of attempt to impugn Congress's intent, I think there are two major problems with the defendant's argument. First of all, it says, you know, the statute here was basically intended to infringe upon First Amendment Congress. That is not consistent with the language of this statute. The language of this statute was constitutional at the time that it was enacted. It incorporated what were the First Amendment standards at the time. That suggests, and the House report specifically states, that this statute does not reach First Amendment Congress. It was Congress's intent to stop riots and to do that through a form that is uniquely suited to the federal government, and that is use of interstate facilities and interstate traffic. The Supreme Court has repeatedly made clear that we cannot impugn the entire body, the entire House of Congress, the words of a few legislators. Here, the House report makes clear that this statute does not reach First Amendment Congress. The statute incorporates protective language that was consistent with the First Amendment. I would also point out that the Supreme Court has gone pretty far in determining whether Congress still would have passed the statute even without the language that must be exercised. And the best example of that is Volcker, where the Supreme Court took the mandatory sentencing guidelines and said, we found a constitutional problem, and now we have to decide whether we can sever some aspect of it. And in that case, the court severed two provisions, and it made those mandatory guidelines. If that is permissible, that is certainly severing these few discreet words, but not in two ways greater than or vastly different to operate on a completely different plane than what Congress intended and what Congress passed here. The other point that I think is a central point is that many of the hypotheticals that we've heard about ignore the intent requirement. I just want to underscore the question that Judge Tiger asked, because the statute requires at two different points, and specifically at that second point, an intent to commit one of those acts, an intent to incite, an intent to participate, to carry on the riot. Simply being present in a scenario where other people are engaged in a riot is not covered by the statute. So, in conclusion, the statute is capable of being narrowly conclusive, or selective, and the portions that are not are discreet, and the statute does not wish to be overbought, and this court should refuse. Okay. Thank you, counsel. Interesting case. We'll submit the matter at this time. Thank you. Thank you again very much. Court, for this session, is adjourned.
judges: Fernandez, Paez, Tigar